LOUIS H. KORTY ET AL. v. JAMES K. McGILL ET AL.

FILED APRIL 4, 1895.    No. 6008.

1. **Principal and Surety:** BONDS. The mere fact that a principal in a proposed bond expressed to an agent of the proposed obligee an opinion as to the necessity of paying off an existing indebtedness to a third party, for which the proposed sureties were then liable, before requesting said proposed sureties again to become liable as such on the proposed bond, did not constitute such payment an indispensable condition precedent to the acceptance of the proposed bond by the obligee therein named.

2. ———: GUARANTY: BONDS. Where the principal has paid for all goods bought before the execution of a bond guarantying that he would pay for all merchandise by him purchased, the fact of

such purchase before execution of the bond is immaterial to the liability of the sureties for goods sold their principal after they had signed his bond.

3. A bond of guaranty of payments for goods to be purchased by the principal, in which it was provided that the obligee should give a credit of sixty days therefor, was not rendered inoperative as against sureties thereon by the obligee taking promissory notes "in making settlements" without reference to a limitation of sixty days, where the taking of promissory notes "in making settlements" was in general terms expressly authorized by the instrument itself.

4. Guaranty: TERMINATION OF CONTRACT: NOTICE. A guaranty of payments by the principal therein named contained a provision that the contract might be terminated by the party to whom the payments were guarantied upon his giving sixty days' notice of an intention to annul the same for any reason other than failure of the principal to perform any prescribed conditions, one of which was the making of payments at certain times. *Held,* That default in the condition specially referred to dispensed with the giving of notice as a condition precedent to the exercise of the right to terminate said contract.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.

*Howard B. Smith,* for plaintiffs in error.

*Jacob Fawcett, contra.*

RYAN, C.

This action was brought in the district court of Douglas county by the defendants in error against Joseph D. Porter, Louis H. Korty, and William J. Mount for a balance due from Porter to the defendants in error. There was a verdict and judgment as prayed. Joseph D. Porter refused to join plaintiffs in error in this proceeding and was, therefore, named as one of the defendants in error. The plaintiffs in error signed as sureties a bond in which Joseph D. Porter was principal and the firm of James K. McGill & Co. was the obligee. In this bond it was re-

cited that the obligee had agreed to sell Joseph D. Porter, during its pleasure, Hammond type-writers, etc., to be sold by Porter in certain defined territory, and that McGill & Co. had agreed to give sixty days' notice of its intention to annul its contract with Porter for any reason other than the failure of said Porter to keep and perform any condition of said obligation. The sales of Porter, it was provided, should be at a discount of thirty per cent from retail price, and, as recited, it had been agreed by the obligee that a credit of sixty days should be given on goods sold from time to time. Following the above provision was this language: "And, whereas, the said James K. McGill & Co. may, at different times, lend certain type-writers to said Joseph D. Porter; and, whereas, in making settlements from time to time the said Joseph D. Porter may give to the said James K. McGill & Co. promissory notes for amounts due to them on such settlements: Now, therefore, if the said Joseph D. Porter shall well and faithfully attend to the said business and shall well and faithfully pay to said James K. McGill & Co. the full amount due from time to time, and shall well and faithfully pay all notes given to them in settlements as aforesaid, whether said notes are still held by said James K. McGill & Co., or have been assigned by them, and shall, when requested by said James K. McGill & Co., turn over to them, their agents or assigns, all borrowed type-writers or consigned goods, and shall well and faithfully keep and perform all of the agreements herein contained and any and all future agreements which he may make with said James K. McGill & Co. in relation to the aforesaid business, then this obligation to be void; otherwise to be and remain in full force and effect."

The sureties contend that the above bond was presented to McGill & Co. by Mr. Porter without authority and by said firm was received with knowledge of that fact, wherefore it results that it was never legally delivered and

never became of binding force. This contention is founded upon the fact that previous to the delivery of the bond sued upon the plaintiffs in error were sureties for Mr. Porter upon a like bond to the Hammond Company as obligee, on which the principal and sureties were still liable to the amount of about $400, which liability, as is claimed, was to have been paid before the bond sued on was to be delivered. It is said in argument that the testimony of Mr. Porter was to the effect claimed. The statement of Mr. Porter to the agent of the firm of McGill & Co. was that it would be necessary for him, Porter, to square up this $400 before he could go to Korty and Mount and ask them for their signature. This did not imply that such payment was in contemplation of the parties a condition precedent to the delivery of the present bond. In relation to the liability of the sureties for goods sold before the delivery of the bond it is to be borne in mind that the aggregate amount of sales to Mr. Porter, between February 11, 1889, and March 6, 1890, was $7,427.85. The credits within the same period amounted to $6,190.34. On the 21st day of August, 1889, there seems, from the statement of the account, to have been had some sort of an examination of the condition of affairs between the principal and the obligee named in this bond. At any rate this statement shows that at that time there was owing but a balance of $81.01. On September 2, immediately following, there was paid in notes more than sufficient to cover the above sum and such further indebtedness as meantime had been contracted. Whether or not the items ordered before the bond was accepted would have been covered by its terms, therefore, practically becomes immaterial, for in fact they have been paid by the principal.

It is urged that there were such extensions of credits beyond the limit fixed by the terms of the bond that the sureties were thereby discharged. There was in the bond only an agreement recited to have been made by McGill &

Co. that said firm would give a credit of sixty days öh type-writers and other articles sold the principal obligor. Later on, as a preamble to the conditions, it was recognized as probable that Mr. Porter might give to the said James K. McGill & Co. promissory notes in making settlements for amounts due. There was no description attempted of the promissory notes which would be available for use in the settlements contemplated. One condition of the bond was that the principal should well and faithfully pay all notes given in settlement as aforesaid. In argument it is insisted that the words "notes given in settlements as aforesaid" limited the duration of the notes to sixty days, for, it is reasoned, a credit of that length of time was provided for in the bond and during that time the indebtedness might be evidenced by notes, and that for notes of that kind alone the sureties were liable. If the language had been in effect that, for balance on account, or on settlements of account between the principal and the obligee, notes of the former to the latter might be given to cover the sixty days time contemplated, there would have been force in the contention under consideration. But such was not the case, neither is there anything in the evidence to indicate that, in fact, notes were ever taken to cover the sixty days credit to which Mr. Porter was entitled. There seems to have been turned in to the company certain notes for which credits were given on account. Some of these may have been paid, probably were, but there were others which, having been discounted at the bank and not paid at maturity, were taken up by James K. McGill & Co. Of this class there was only one given by Mr. Porter, which note was for $300, on which there was paid $200. This action was not brought on these notes, but on an account current between McGill & Co. and Joseph D. Porter in which the several notes figured simply as items of debit or credit. Since the several notes taken on settlements were not intended to cover the sixty days credit pro-

vided, and apparently were given or indorsed to the obligee
as conditional payments, there was no ground for the as-
sumption that by the taking of these notes a credit differ-
ent from that contemplated was given to the principal, re-
sulting in the release of his sureties.   In our view, it was
not necessary that sixty days' notice in writing should have
been given of the intention of McGill & Co. to terminate
the relations between that firm and the principal obligor,
for the evidence shows that the relations were terminated
because of his default,—a condition of affairs which by the
terms of the bond itself dispensed with the necessity of
giving notice.   This being true, there was no error in. ex-
cluding evidence which tended to show the existence of a
valuable good-will of trade thereby destroyed which by
Mr. Porter had been pleaded as a counter-claim.

There are asserted miscellaneous grievances, such as a
remark of the court upon presentation of a motion to in-
struct that no ground of counter-claim had been estab-
lished ; that said court very much doubted whether there
was sufficient evidence, but that the motion would be over-
ruled.   This language was not intended for the jury, and
when it was excepted to there was a prompt statement to
that effect addressed directly to the jury. · In the instruc-
tions the duty of jurors to disregard all remarks which had
been made by the court during the trial with reference to
questions of fact was very fully and emphatically stated.
Under these circumstances it is not believed possible that
the result was at all affected by the language of which com-
plaint is now made.   Among the general complaints made
there is one as to the striking out of certain evidence after
it had been admitted.   If there was error in this, plaintiffs
in error cannot avail themselves of it, for no exception was
taken to any ruling of that character.   Speaking for him-
self alone, the writer hereof suggests that motions of this
character are of very doubtful advantage, for, if the motion
is sustained, the striking out is simply from the record.

No power short of Omnipotence can in fact withdraw it from the jury. If a party has procured it to be stricken from the record, he is in a very awkward situation to in-sist that, nevertheless, the error appears in the record. It is not necessary to consider separately the several errors as-signed and argued as to the giving or refusal to give instructions. The various propositions involved have already received full consideration and there exists no ne-cessity for amplification, merely to illustrate just how the different questions were presented.

There were submitted special interrogatories, which were fully answered in consonance with the general verdict. Each of these was sustained by sufficient evidence, and the judgment upon the general verdict is

AFFIRMED.